IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) |
| v. | ) Criminal No. 9:02-02-SB |
| | ) |
| Joseph Grayson Ward, | ) |
| | ) **ORDER** |
| Defendant/Movant. | ) |



This matter is before the Court upon Joseph Grayson Ward's ("Ward") pro se motion to vacate, correct, or set aside a sentence, filed pursuant to 28 U.S.C. § 2255. The government filed a response to Ward's motion and a motion to dismiss, or in the alternative, for summary judgment. In response, Ward also filed a motion for summary judgment. For the reasons set forth herein, the Court denies both Ward's section 2255 motion and his motion for summary judgment and grants the government's motion.

**BACKGROUND**

Ward pleaded guilty on September 30, 2002, to a one-count indictment charging him with participating in a drug-trafficking conspiracy involving fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 846. On April 8, 2003, the Court sentenced Ward to the statutory mandatory minimum of twenty years, based on Ward's prior record. Ward attempted to appeal on April 25, 2005, but the Fourth Circuit Court of Appeals dismissed his appeal as untimely. Thereafter, Ward filed a motion to reopen, and eventually, this Court vacated its April 2003 judgment and reentered the judgment on February 7, 2007, to allow Ward to file a belated appeal. Ultimately, the Fourth Circuit denied Ward's appeal on September 6, 2007, issuing its mandate on September 28, 2007.

United States v. Ward, 246 F. App'x 835 (4th Cir. 2007) (unpublished). On April 14, 2008, the United States Supreme Court denied Ward's petition for a writ of certiorari. Ward v. United States, 128 S.Ct. 1914 (2008). Then, on April 13, 2009, Ward filed the instant section 2255 motion, wherein he raises the following grounds for relief:

> GROUND ONE: Mr. Ward was denied the effective assistance of counsel.
>
> Attorney Charles B. Macloskie was constitutionally ineffective due to: (1) Macloskie's misadvice that 64 grams of methamphetamine (mixture) seized exceeded the 50 grams of methamphetamine (actual) charged in the indictment; and (2) Macloskie's misadvice concerning Ward's mandatory minimum sentence: which, in concert, resulting in Ward pleading guilty.
>
> GROUND TWO: Mr. Ward's Sentence Was Enhanced Based on Unconstitutionally Obtained Prior Convictions Currently Under Collateral Attack That Requires Resentencing

(Entry 125 at 4-5; Entry 125-1 at 4, 10.)

Attached to his section 2255 motion, Ward included the reports of the drug property seized from him, his sworn declaration, a sheet listing potential drug penalties, and the affidavit of his mother. In his sworn declaration, he asserts that his counsel told him that he had to plead guilty and that his counsel never told him that he was facing a mandatory minimum of twenty years. He also asserts that he admitted to at least 50 grams of methamphetamine because his counsel convinced him that the amount of drugs seized exceeded that amount. In her affidavit, Ward's mother states that Ward told her that his counsel had informed him that he would not receive a sentence of more than ten years.

In response, the government filed a motion to dismiss, or in the alternative, for summary judgment. Ward also filed a motion for summary judgment, and the matter is ripe for review.

2

**STANDARD OF REVIEW**

Ward proceeds under 28 U.S.C. § 2255, which provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. On a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, the movant bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

**DISCUSSION**

**I.     Ground One: Ineffective Assistance of Counsel**

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and that such assistance be effective. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984). In Strickland, the Supreme Court held that a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced the defense. Id. at 687-98. Although Strickland involved a claim of ineffective assistance of counsel in a capital sentencing proceeding, the same two-part standard applies to an ineffective-assistance claim arising out of the guilty plea process. Hill v. Lockhart, 474 U.S. 52, 56 (1985).



To demonstrate the first part of the Strickland test – that counsel's performance was deficient – a movant "must show that counsel's representation fell below an objective standard of reasonableness" measured "under prevailing professional norms." Strickland,

466 U.S. at 687-89. A court's evaluation of counsel's performance must be "highly deferential" so as not to "second-guess counsel's assistance." Id. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). In short, the standard is "deficient performance," rather than conduct that is simply below average. Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997) (citing Griffin v. Warden, 970 F.2d 1355, 1357 (4th Cir. 1992)).

To establish prejudice and thereby fulfill the second prong of the Strickland test, a movant must show that "there is a reasonable probability that, but for counsel's professional errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58. This determination is an objective one based on whether going to trial reasonably might have resulted in a different outcome. Id. at 59-60.

In his section 2255 motion, Ward asserts that his counsel was ineffective for giving him bad advice and that he pleaded guilty as a result of his counsel's bad advice. Specifically, Ward states:

> Counsel's performance was deficient where his advice to Mr. Ward was objectively false. First, Mr. Macloskie inaccurately informed petitioner that the drugs seized exceeded the statutory threshold charged in the indictment. Secondly, counsel misadvised Mr. Ward that he could, and probably would, receive a sentence of around ten years, despite counsel's awareness that petitioner faced a twenty year mandatory minimum.

(Entry 125-2 at 5.)

In response to Ward's claim, the government first asserts that Ward is rehashing arguments already rejected by the Fourth Circuit on his direct appeal. In addition, with respect to Ward's argument that less than 50 grams of methamphetamine was seized from him on December 20, 2001, the government points out that the quantity of drugs attributable to Ward was not limited to the amount seized from him on December 20, 2001, but rather, the quantity attributable to Ward encompassed the methamphetamine distributed throughout the time frame of the conspiracy.

In his motion for summary judgment, Ward again contends that his counsel never told him that he was facing a mandatory minimum sentence of twenty years and that he was not informed that the government could rely on evidence related to the manufacture of methamphetamine (as opposed to evidence of possession and distribution).

Here, the Court has undertaken an extensive review of the record to determine whether a hearing is necessary and whether Ward's claim has merit. "When deciding whether an evidentiary hearing is necessary to resolve a § 2255 motion contesting a guilty plea, first a court must determine whether the petitioner's allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous as to warrant summary dismissal." United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005) (internal quotation marks and citations omitted). "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity . . . .' " United States v. White, 366 F.3d 291, 296 (4th Cir.2004) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (1977)). This presumption exists "because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 colloquy." United States v. Bowman, 348 F.3d 408, 417 (4th Cir.2003). In the absence

5

of extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy in open court is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict sworn statements." Lemaster, 403 F.3d at 221. "Otherwise, a primary virtue of Rule 11 colloquies would be eliminated-'permit[ting] quick disposition of baseless collateral attacks.' " Id. (citing Blackledge, 431 U.S. at 79 n. 19).

The record here reflects that the statements made by Ward in open court during his plea hearing contradict his current assertion that his attorney misinformed him about the consequences of his plea. Specifically, during the Rule 11 plea colloquy, the Court asked Ward whether he was satisfied with his attorney and whether his attorney had been over the charges with him. Ward responded yes. (Pl. Tr. Sept. 30, 2002 at 3.) The Court then reviewed the consequences of a guilty plea with Ward, and importantly, the Court reviewed Ward's potential sentence with him and explained the applicable enhancement.

> The Court: Let me tell him – What is the sentence without the enhancement?
>
> Mr. Shealy: Without the enhancement it would be twenty years – excuse me – it would be ten years to life, four million dollars fine, at least eight years minimum supervised release, and a hundred dollar special assessment.
>
> The Court: And did you hear what he's – that's under the statute. Did you hear what he said clearly?
>
> The Defendant: Yes, sir.
>
> The Court: Now, that means that under normal circumstances, that you have – the Court would be required under the statute to give you a minimum of ten years, to a maximum of life, up to four million dollar fine. You'd have to pay a hundred dollar special assessment. And it was eight years supervised release, Mr. United States Attorney?

Mr. Shealy:    Yes.

. . .

The Court:      . . . Now, I understand, I talked to your attorney and to the United States Attorney before I came in, they came here to tell me this, you've been convicted, you have a prior drug felony conviction on your record.

The Defendant: Yes, sir.

. . .

The Court:      Now, under the law, under the statute, the Government is entitled to what we call enhance your penalty for the present crime, because you have a prior drug felony conviction.

The Defendant: Yes, sir.

. . .

The Court:      By, enhancing it, I mean make it worse, makes it higher, your sentence is higher. And you're entitled to written notice of that. But I understand from your attorney, that since you have not signed a plea agreement which would have had that in there, that you're willing to waive written notice and accept verbal notice from the United States attorney as to that right to enhance you, just as though they had put it in writing. Am I correct in that?



The Defendant: Yes, sir.

. . .

The Court:      Mr. Macloskie, have you explained his rights about this in detail to him?

Mr. Macloskie:      Yes, Your Honor, I have.

The Court:      All right, Mr. United States Attorney, now give us the enhancement, what the prior drug conviction allows you to do.

Mr. Shealy:    . . . We're moving to enhance his sentence and notice only one of those prior convictions for purposes of 21 851 and 21 841, which would enhance his sentence from ten – from a

7

mandatory minimum of ten years to life to a mandatory minimum of twenty years to life . . . .

The Court: Well, your enhancement makes a minimum sentence twenty to life.

Mr. Shealy: That's right.

The Court. Rather than ten to life.

Mr. Shealy: Right.

. . .

The Court: Now, Mr. Ward, this enhancement we're talking about, enhance means to increase.

The Defendant: Yes, sir.

The Court: And he has orally filed rather than done it, and you've waived the right to require it to be in writing, says that – what it does, it makes, under the statute now, speaking of the statute, it makes your minimum term of imprisonment twenty years to life, makes your maximum fine eight million dollars rather than four million, it makes your supervised release ten years rather than eight, and it leaves a special assessment at a hundred dollars. But the enhancement provision which the United States attorney is placing in the record, has placed in the record, and which we've discussed, makes those changes that I've just given to you. Now, do you fully understand that?

The Defendant: Yes, sir.

The Court: All right, sir. Now, Mr. Macloskie, have you been over that, the effect of that enhancement?

Mr. Macloskie: Yes, Your Honor, I have.

The Court: And do you believe that your client fully understands the effect of it?

Mr. Macloskie: Yes, Your Honor. I do.

The Court: No question in your mind about the effect of it, is there, Mr. Ward?

8

The Defendant: No, sir.

(Plea. Tr. Sept. 30, 2002 at 6-16.)

Later during the plea colloquy, the Court used an example to explain to Ward how the enhancement would work. Specifically, the Court used a sample guideline range of 200 and 260 months, explaining to Ward that this was just an example and did not represent his actual guideline range. The Court continued:

> The Court: That would normally mean that I could sentence you to a minimum of two hundred months, a maximum of two hundred and sixty months. . . .
> However, now, in your particular case, even though the guideline range might be two hundred to two sixty, the statute requires that you be sentenced to a minimum of twenty years or two hundred forty. So that narrows your guideline range from two forty to two sixty. You understand what I'm telling you?

The Defendant: Yes, sir.

> The Court: So it would come back and that would mean then that I'd sentence you somewhere between two forty and two sixty. But under no situation could your guideline range be less than two forty, because the statute requires that. Even if your guideline range were a hundred and sixty to two hundred – I don't know what they are, but even if they were that, you couldn't get less; the statute says that you've got to have twenty years, or two hundred forty months.
> You understand what I'm talking about?

The Defendant: Yes, sir.

(Plea Tr. September 30, 2002 at 17-18.)

When the Court asked Ward whether anybody had told him exactly what sentence the Court would impose, Ward responded "No, sir. Nobody's told me." (Plea Tr. Sept. 30, 2002 at 23.) The government then set forth the factual background of the case, and the Defendant agreed that the agent's testimony was substantially true and correct. (Plea Tr.

Sept. 30, 2002 at 23-27.) Finally, the Court asked Ward about the quantity of drugs.

> The Court: One other thing, Mr. Ward. You're charged with distributing fifty grams or more of methamphetamine. In all the distribution and manufacturing that you and maybe others did, was that much – at least that much involved? At least?

> The Defendant: Yes, sir.

(Pl. Tr. Sept. 30, 2002 at 28.)

As previously set forth, because courts must be able to rely on a defendant's statements made under oath during a properly conducted Rule 11 plea colloquy, the defendant's statements "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings." Lemaster, 403 F.3d at 221. Here, the Rule 11 plea colloquy flatly contradicts Ward's instant claims. Indeed, a review of the plea colloquy indicates not only that Ward was aware of the twenty year mandatory minimum sentence that he faced, but also that Ward himself admitted that his crime involved at least 50 grams of methamphetamine. Ward's instant claims to the contrary are palpably incredible, and Ward has provided no "exceptional circumstances" to overcome the presumption that the statements he offered in open court were reliable and truthful. Accordingly, the Court finds that no hearing is necessary and that the government is entitled to summary judgment on this claim.

## II.     Ground Two: Ward's Collateral Attack of his Prior Convictions

In ground two, Ward asserts that his sentence was incorrectly enhanced because his prior convictions were unconstitutionally obtained. He asserts that he has filed state court actions challenging his prior convictions and that these actions are still pending. He

asks that the Court stay his section 2255 motion until the underlying state actions are resolved or in the alternative that the Court dismiss this claim without prejudice.

Here, even the government admits that Ward may return to this Court to challenge his enhancement should he be successful in obtaining a state court order vacating the predicate conviction. Moreover, it appears that a state vacatur would trigger a new one-year statute of limitations, assuming that Ward acted diligently in seeking the state vacatur. See Johnson v. United States, 544 U.S. 295 (2005) (holding that the vacatur of a prior state conviction that was used to enhance a federal sentence starts the one-year period under 28 U.S.C. § 2255(d) so long as the defendant acted diligently to obtain the state court order vacating the predicate conviction). At this time, it does not appear that Ward has been successful in obtaining a state order vacating his predicate conviction, and therefore, this claim is not yet ripe. In any event, in the interest of fairness, the Court will dismiss this claim without prejudice.



## CONCLUSION

Based on the foregoing, the Court denies Ward's section 2255 motion (Entry 125) and his motion for summary judgment (Entry 146), and the Court grants the government's motion for summary judgment (Entry 142).[1]

**AND IT IS SO ORDERED.**[2]



The Honorable Sol Blatt, Jr.
Senior United States District Judge

July __6__, 2010
Charleston, South Carolina

#12

---

[1] As stated above, the Court dismisses without prejudice Ward's claim concerning the state conviction used to enhance his sentence.

[2] Because the Court does not find that Ward has made a substantial showing of the denial of a constitutional right, the Court denies a certificate of appealability. See Rule 11(a) of the Rules Governing § 2255 Cases in the United States District Courts; 28 U.S.C. § 2253(c)(2).